**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY TARSIO, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>FCA US LLC; Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V.,<br><br>        Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Anthony Tarsio ("Plaintiff" or "Tarsio"), by and through his attorney, files this action on behalf of himself and all other similarly situated against FCA US LLC and Stellantis N.V. f/k/a Fiat Chrysler Automobiles N.V. (collectively, "FCA" or "Defendants"), and allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action individually and on behalf of a putative Class consisting of all persons in the United States and its territories who purchased or leased any 2022 Ram 1500, Ram 2500, and Ram 3500 Chassis Cab Vehicles with gross vehicle weight rating (GVWR) of less than 10,000 pounds (collectively, "Class Vehicles" or "Vehicles") during the applicable statute of limitations period (the "Class Period") (the "Class").

2.      As alleged herein, the Class Vehicles are defective and unsafe.  The Vehicles have a defective rearview camera system that causes critical vehicle safety components, namely the Vehicle's backup camera, to function intermittently or to fail altogether (the "Rearview Camera Defect" or "Defect").

3.      Based on counsel's analysis of publicly available materials, including but not limited to statements released by Defendants and National Highway Safety Administration ("NHTSA"), the rearview camera systems in all Class Vehicles suffer from defects that result in partial or total loss of the rearview image when backing.  According to Defendants, Class Vehicles have been "built with an incompatible rearview camera and radio combination that may prevent the rearview image from displaying…."

4.      A vehicle should function in a manner that the driver expects.  Properly functioning rearview cameras will display a full-color, real-time image on the driver's dashboard of the significant blind spot behind the vehicle.  If an object or person is in the vehicle's path, the system will alert the driver that proceeding is unsafe.  In practice, however, Defendants' rearview camera systems fail to alert the driver, causing numerous safety concerns.

5.      The Defect is a significant safety hazard.  Back-over crashes have killed hundreds of people each year and injured thousands more.  By failing to display the rearview image or accurately warn the driver, the Defect poses a significant safety hazard to drivers and occupants of Class Vehicles and other members of the public.

6.      On information and belief, Defendants' corporate officers, directors, or managers had exclusive knowledge about the Rearview Camera Defect.  Still, they failed to disclose it to Plaintiff and Class Members, including at the time of the sale, lease, and repair.

7.      On information and belief, the Rearview Camera Defect is uniform and common to all Class Vehicles.

8.      Because Defendants did not notify Class Members that the rearview camera system is defective, Plaintiff and Class Members purchased vehicles that are subject to dangerous driving conditions that often occur without warning.

2

9.     The alleged Defect was included in each Class Vehicle and was present in each Class Vehicle at the time of sale, lease, and repair.

10.     Defendants had actual knowledge of the Rearview Camera Defect since at least November 5, 2021.  According to Defendants' Recall Report [222V-407], Defendant first discovered the Defect at an FCA assembly plant while shifting a Class Vehicle into reverse.  The vehicle's radio screen appeared blue, with the text stating the camera system was unavailable. Defendants then proceeded to test vehicles, and bench testing confirmed the Defect on January 19, 2022.

11.     Defendants knew or should have known of the Defect much earlier due to pre-production testing, failure mode analysis, reports to authorized dealers and repair centers, and complaints to the NHTSA.  To continue profiting from the sale of Class Vehicles, Defendants omitted material information about the Rearview Camera Defect and did not disclose the Defect to Plaintiff and Class.

12.     Despite having actual knowledge of the Defect since at least November 5, 2021, Defendants did not conduct a safety recall of the Class Vehicles until June 13, 2022 (NHTSA Recall No. 22V-407) (the "Recall").  Moreover, Defendants did not provide direct notice to consumers regarding the Defect until July 29, 2022.

13.     Defendants knew about the Defect present in every Class Vehicle, along with attendant dangerous safety problems, and concealed this information from Plaintiff and Class Members at the time of sale, lease, and repair.  In its Recall, Defendants noted the severity of the Rearview Camera Defect.  They warned owners that driving while the rearview image is not displayed could increase the risk of injury to people outside the vehicle.

14. Defendants' delayed Recall is insufficient to remedy the harm caused to Plaintiff and Class Members. Plaintiffs and Class Members overpaid for their Class Vehicles in that the vehicles they purchased did not comply with federal law, and Plaintiffs and Class Members were and are deprived of the full use of their Class Vehicles in that they were unable to operate the vehicle with the benefit of all its critical safety features.

15. These additional delays caused, and will continue to cause, loss of use and out-of-pocket expenses to the Plaintiff and Class Members, many of which have paid and are continuing to pay for a loaner vehicle.

16. Despite Defendants' actual knowledge of the Defect, Defendants omitted information regarding the Defect from their advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase and/or lease. By failing to inform Class Members of the Defect and delaying the Recall, Defendants have prioritized profits over the safety of the Plaintiff, Class Members, and the general public, who are all endangered by the Rearview Camera Defect.

17. Plaintiff and the Class Members all purchased vehicles of a lesser quality than was represented. The Class Vehicles do not meet ordinary and reasonable consumer expectations regarding quality, durability, or value and are unfit for their intended purpose.

18. If Plaintiff and Class Members had known about the Defect at the time of sale or lease, they would not have purchased or leased the Class Vehicles or paid less for them.

19. As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Plaintiff and Class Members were deprived the benefit of their bargains. They have paid out-of-pocket for repairs and loaner vehicles, and suffered from the diminished value of their vehicles. Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and

suffered actual damages in that the Class Vehicles' rearview camera systems are substantially likely to fail before their expected useful life has run.

## THE PARTIES

### Plaintiff Anthony Tarsio

20.     Plaintiff Anthony Tarsio is a citizen of New York and resides in Newburgh, New York.

21.     In or around February 2022, Tarsio purchased a 2022 RAM 1500 (VIN: 1C6SRFBT2NN155353) from a RAM authorized dealer, Hudson Valley Chrysler Dodge Jeep Ram ("Dealer"), in Newburgh, New York. Tarsio purchased the vehicle for personal or household use.

22.     Unbeknownst to Tarsio at the time of purchase in February 2022, Tarsio's vehicle was equipped with a defective rearview camera system.

23.     Shortly after purchasing the vehicle, Tarsio noticed the rearview camera system malfunctioning. The system would prevent Plaintiff's Class Vehicle from reversing, alerting to a rearview obstruction that was not present. Other times, the rearview camera would fail to alert Plaintiff when an object obstructed the driver's path.

24.     As a result of these malfunctions, Plaintiff had to bring his Class Vehicle into the Dealer for repairs three times during the first month of ownership. Each time the Dealer would attempt to repair Plaintiff's Vehicle to no avail. After the Dealer's final attempt repair, the Dealer explained to Plaintiff that Defendants were aware of a software defect causing the rearview camera failure but had not yet created a solution.

25.     Then, on or around July 9, 2022, Tarsio was involved in an accident while driving his Ram 1500. Specifically, Tarsio backed out of his driveway, but his rearview camera system failed to operate, contributing to a collision with another vehicle and damaging both vehicles.

26.    Plaintiff did not know and had no way of knowing the Class Vehicles contained Defects that caused the rearview image not to display when referencing the image while backing. Rather, before acquiring a Class Vehicle, Plaintiff viewed or heard commercials and reviews regarding the safety and reliability of the Class Vehicles.

27.    Defendants concealed the existence of the Defect from Plaintiff, Class Members, and the public. Plaintiff and the other Class Members would not have purchased the Class Vehicles or would have paid less for them if Defendants did not conceal material information about the existence of the Defect. As a result of the concealed Defect, the value of the Plaintiff's and other Class Member's vehicles has diminished.

28.    Plaintiff and each other Class Members' ascertainable losses include, but are not limited to, out-of-pocket losses by overpaying for the vehicles at the time of purchase, decreased performance of the vehicles, and diminished value of the vehicles. Accordingly, Plaintiff brings claims individually and as a representative of the Class.

**Defendants**

29.    On information and belief, Defendant FCA US, LLC, is a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, MI, 48326. The Class Vehicles at issue here are part of the FCA US, LLC, family of companies, which is, in turn, part of Stellantis N.V.

30.    Defendant Stellantis N.V. is a Dutch corporation with its headquarters in Amsterdam, Netherlands. At present, Stellantis is the ninth largest automaker in the world with annual revenue nearly 100 billion dollars. Below, unless otherwise specified, Stellantis and FCA US, LLC, are referred to collectively as "FCA."

31.     FCA US, LLC, engages in interstate commerce by marketing and distributing vehicles for sale under the Chrysler, Jeep, Dodge, Ram, Fiat and Maserati brands through its authorized dealers located in every state of the United States, including within this District.

## JURISDICTION

32.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is diversity because Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

33.     This Court has personal jurisdiction over the parties because Plaintiff purchased the Class Vehicle in and lives in the State of New York.  Additionally, FCA conducts substantial business in this State, has had systematic and continuous contacts with this State, and has agents and representatives that can be found in this State.

## VENUE

34.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because this is a District in which a substantial part of the events or omissions giving rise to the claims occurred. Defendants have marketed, advertised, and/or sold the Class Vehicles within this District, including through numerous FCA dealers doing business in the District.  Defendants' actions have caused harm to thousands of members of the Class residing in New York, including Plaintiff.

## FACTUAL ALLEGATIONS

35.     Defendants, directly and/or through their agents, designed, manufactured, distributed, sold, leased, and warranted thousands of Class Vehicles in a uniform manner throughout the United States.  Defendants, directly and/or through their agents, developed and disseminated uniform promotional materials (such as owner's manuals and warranties) regarding

the Class Vehicles and all materials available at the point of sale and/or lease.  Defendants, directly and/or through their agents, designed, manufactured, and/or installed uniform rearview camera systems with the Defect in hundreds of thousands of the Class Vehicles distributed throughout the United States.

36.     Defendants marketed the Class Vehicles as having premier quality, reliability, and durability.  Through its slogan, Ram promises that Class Vehicles are "Built to Serve."  Similarly, Ram markets the Class Vehicles as being built with a "360[degrees] surround view camera," providing "a complete picture of vehicle surroundings, helping you to maneuver safely and securely."

37.     In stark contrast to its representations, Defendants equipped Class Vehicles with defective rearview camera systems, causing partial or total loss of rearview image capability and creating safety risks with potentially deadly consequences for Plaintiff, Class Members, and the public.

38.     Rearview cameras are a critical safety feature in vehicles.  Back-over crashes kill hundreds of people each year and injure thousands more.  Recognizing the danger posed by back-over crashes, in 2008, Congress passed the Cameron Gulbransen Kids Transportation Safety Act, requiring regulators to enact measures adopting technology to improve rearview visibility.  As a result, regulators enacted Federal Motor Vehicle Safety Standard 571.111 ("FMVSS No.111"), requiring all vehicle manufacturers to ensure "the rear visibility system default to the rearview image being visible,…at the beginning of each backing event…."  Accordingly, functioning backup cameras are a requirement of baseline vehicle functionality and a minimum level of quality. The defective rearview camera system causes the backup camera on the Class Vehicles to malfunction or fail, posing a serious safety hazard and resulting in a violation of FMVSS No.111.

39.     On June 13, 2022, Defendant FCA issued a safety recall (NHTSA Recall No.: 22V-407) affecting certain 2022 Ram 1500, 2500 pickup trucks, and 3500 Cab Chassis vehicles with a GVWR less than 10,000 lbs.  The Recall states, "vehicles may have been built with an incompatible rearview camera system and radio combination that may prevent the rearview image from displaying under certain conditions. The vehicle operator will notice that the rearview image is not displayed if attempting to reference the image while backing. If this warning is not heeded, backing without verifying it is safe to do so could lead to an increased risk of injury to people outside the vehicle." Therefore, Defendants explained, "these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard number 111, 'Rear Visibility.'"

40.     Defendants knew or should have known of defects in material and/or workmanship in Class Vehicles if Defendants had adequately tested the rearview camera systems and radio software in the Class Vehicles.  Knowledge and information regarding the rearview camera systems and the Defect were exclusively in Defendants' and their agents' possession.

41.     Defendants possessed or should have possessed actual knowledge of the Rearview Camera Defect from various sources.  First, Defendants gained and possessed actual knowledge regarding the Defect through internal testing.  Defendants and/or their agents conduct internal pre-production testing and abide by quality control mandates.  Second, Defendants gained and possessed actual knowledge regarding the Defect through customer complaints, data, and claims. Defendants' dealerships report customer complaints, data, and warranty claims to Defendants, which include complaints and claims concerning the Defect.  Defendants have access to and monitor internal databases containing customer complaints and warranty claims, which allow for Defendants to identify and address design and engineering problems.  Defendants likewise have access to and monitor the NHTSA customer complaint database, which includes complaints

regarding the Rearview Camera Defect.  Thus, Defendants were aware or should have been aware of the Rearview Camera Defect in the Class Vehicles.

42.     Defendants knew, or should have known, that the Rearview Camera Defect was material to owners of the Class Vehicles because safety and reliability are reasonable expectations among purchasers and lessees of Class Vehicles.  Defendants knew, or should have known, that the Rearview Camera Defect was not known or reasonably discoverable by Plaintiff and the Class before they purchased or leased Class Vehicles.  The information about the Defect in Defendants' possession and available to Defendants was technical, proprietary, and not known by the ordinary consumer or the public, including Plaintiff and members of the Class.  Defendants knew, or should have known, that Plaintiff and the Class did not possess the adequate technical expertise to recognize the Rearview Camera Defect.

43.     Defendants knew, or should have known, that the Rearview Camera Defect may cause partial or complete loss of driver's rearview image in the Class Vehicles.  Defendants knew, or should have known, that such malfunction of rearview camera poses a safety hazard to Plaintiff, the Class, passengers in Class Vehicles, and the public.

44.     Despite this knowledge, Defendants continued to sell Class Vehicles with the Rearview Camera Defect. They allowed the Class Vehicles to be driven on the road, thereby endangering Plaintiff, the Class, and the public.

45.     Defendants fraudulently, intentionally, negligently, and/or recklessly concealed the Rearview Camera Defect and its attendant safety risks from Plaintiff and Class Members.  Defendants affirmatively concealed material facts concerning the Rearview Camera Defect to avoid costly recalls that would negatively impact their reputation.  Rather, Defendants continued selling and leasing vehicles with the Defect to maintain profits.

46.    Despite discovering the Rearview Camera Defect on November 5, 2021, and issuing a recall on June 13, 2022, owner notification letters were not mailed until July 29, 2022.

47.    Owner notification letters instructed Plaintiff and Class Members to repair Class Vehicles immediately "to ensure the safety of you and your passengers," and to schedule an appointment with their dealer for inspection and repair. In the meantime, Plaintiff and Class Members have no choice but to drive a defective and inherently unsafe vehicle or pay significant out-of-pocket expenses for a loaner vehicle until Defendants conduct inspections and, if necessary, repair the vehicles.

48.    The alleged Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale or lease.

49.    The existence of the Rearview Camera Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Ram vehicle. If Plaintiff and other Class Members had known that the rearview camera systems in the Class Vehicles were defective, they would not have purchased or leased them or they would have paid less.

50.    Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's rearview camera system is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiff and Class Members reasonably expect that Defendants will not sell or lease vehicles with known safety defects, such as the Rearview Camera Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Defendants to fail to disclose the Rearview Camera Defect to them until they were finally forced to issue a recall.

51.    Because of Defendants' asymmetrical knowledge regarding the Defect, the bargaining position of Defendants for the sale or lease of Class Vehicles was disproportionate and superior to that of individual vehicle purchasers or lessees, including Plaintiff and members of the

Class. Defendants' conduct renders the vehicle contract so one-sided and unconscionable. Defendants are engaged in continuing fraud concerning the true underlying cause of Class Vehicle failures.

52.     As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and the Class sustained ascertainable losses when purchasing or leasing Class Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

53.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the rearview camera defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and the Class were deceived regarding the nature, condition, quality, reliability, functionality, and safety of the Class Vehicles. They could not have reasonably discovered the Defect or Defendants' deception with respect to the existence and extent of the Defect.

54.     Plaintiff and Class Members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Vehicles contained the Defect and corresponding safety risk. As alleged herein, the existence and the extent of the Defect were material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and the Class could not have discovered the existence and extent of the Defect through the exercise of reasonable diligence or that Defendants were concealing the Defect.

55.     At all times, Defendants are under a continuing duty to disclose to Plaintiff and the Class the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk.

56.     Defendants knowingly, actively, and affirmatively concealed the facts alleged herein, including the existence and extent of the Defect by various methods, including but not

limited to denying the existence of the Defect in response to Plaintiff's and Class Members' complaints.  Plaintiff and the Class reasonably relied on Defendants' knowing, active, and affirmative concealment.

57.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment. Defendants are estopped from reply on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class and Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

59.     The Class and Sub-Class are defined  as:

**Multistate Class**: All individuals residing in California, Colorado, Illinois, Kansas, Missouri, New York, Ohio, Oklahoma, Texas, Utah, and Virginia who purchased or leased any 2022 Ram 1500, Ram 2500, and Ram 3500 Chassis Cab Vehicles with gross vehicle weight rating (GVWR) of less than 10,000 pounds during the applicable statute of limitations period.

**New York Sub-Class**: All members of the Class who purchased or leased their vehicles in the State of New York.

60.     Excluded from the Multistate Class and the Sub-Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a

13

result of the facts alleged herein. Plaintiff reserves the right to amend the Multistate Class and Sub-Class definitions if discovery and further investigation reveal that the Multistate Class and Sub-Class should be expanded or modified.

61.    There is a well-defined community of interest in the litigation, and the Multistate Class and Sub-Class are readily ascertainable.

62.    **Numerosity**: Although the exact number of prospective Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of prospective Class Members' claims in a single action will substantially benefit all parties and the Court. The prospective Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

63.    **Typicality**: Plaintiff's claims are typical of the claims of all prospective Class Members in that Plaintiff and the prospective Class Members purchased or leased a Class Vehicle designed, manufactured, and distributed by Defendants and equipped with the Rearview Camera Defect. Plaintiff and all Class Members have been damaged by Defendants' misconduct in that they would not have purchased their Class Vehicles, or would have paid less for the vehicles, had Defendants disclosed its knowledge of the Rearview Camera Defect and because the Class Vehicles' rearview camera systems are substantially certain to fail before their expected useful life has run. Class Members have incurred or will incur the cost of repairing or replacing the defective rearview camera system. Furthermore, the factual bases of Defendants' misconduct are common to all prospective Class Members and represent a common thread resulting in injury to all prospective Class Members.

64.    **Commonality**: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting individual prospective Class Members.  These common legal and factual issues include the following:

a)    Whether the rearview camera system in the Class Vehicles is defective;

b)    Whether the Rearview Camera Defect constitutes an unreasonable safety risk;

c)    Whether and when Defendants knew about the Rearview Camera Defect;

d)    Whether the Rearview Camera Defect constitutes a material fact;

e)    Whether Defendants had a duty to disclose its knowledge of the Rearview Camera Defect to Plaintiff and Class Members;

f)    Whether Plaintiff and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g)    Whether Defendants knew or reasonably should have known of the Rearview Camera Defect before selling and leasing Class Vehicles to Plaintiff and Class Members;

h)    Whether Defendants should be declared financially responsible for notifying all prospective Class Members of the Rearview Camera Defect and for expenses of repairing the Rearview Camera Defect; and

i)    Whether Defendants are obligated to inform Plaintiff and Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace the defective rearview camera system.

65.    **Adequate Representation**: Plaintiff will fairly and adequately protect prospective Class Members' interests.  Plaintiff has retained attorneys experienced in prosecuting class actions,

including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

66.    **Predominance and Superiority**: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages due to Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Class Members will continue to incur damages absent a class action, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation. Class treatment will conserve the resources of the courts and the litigants and promote consistency and adjudication efficiency.

67.    In the alternative, the Class may be certified because:

a)    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

b)    The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications or substantially impair or impede their  ability to protect their interests; and

c)      Defendants have acted or refused to act on grounds generally applicable to the

Class, thereby making appropriate final and injunctive relief with respect to the

members of the Class as a whole

## FIRST CAUSE OF ACTION
**Breach of Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq*.**

68.      Plaintiff incorporates by reference the allegations contained in the previous

paragraphs of this Complaint.

69.      Plaintiff brings this cause of action on behalf of himself and on behalf of the

members of the Multistate Class, or in the alternative, on behalf of the individual New York Sub-

Class.

70.      The Class Vehicles are a "consumer product" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(1).

71.      Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(3).

72.      Defendants are each a "supplier" and "warrantor" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

73.      Defendants' express warranty is a "written warranty" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

74.      As part of these written warranties, Defendants warranted that the Class Vehicles

were defect-free and/or would meet a specified level of performance over a specified period of

time that formed the basis of a bargain between Defendants and Plaintiff and the Class.

75.      Defendants also warranted that they would repair or replace, free of charge, any

defects in material or workmanship in the Class Vehicles that manifested during the warranty

period.  Despite such warranty, Defendants failed to make such required repairs on three separate occasions when presented with Plaintiff's vehicle during the warranty period.

76.     Furthermore, Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for their intended use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and the rearview camera systems that were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their rearview camera systems would be fit for their intended use while the Class Vehicles were being operated.

77.     Contrary to the applicable warranties, the Class Vehicles and their rearview camera systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles suffer from a rearview camera defect, which renders the Class Vehicles unsafe and unable to provide reliable transportation.

78.     Defendants' breach of express and implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain.

79.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

80.     Plaintiff and the Class were not required to notify Defendants of their violations of the Magnuson-Moss Warranty Act and/or were excused from doing so because affording FCA a reasonable opportunity to cure its warranty breaches would have been futile.  Defendants were also on notice of the Defect from the complaints and service requests it received from Class

Members, from repairs and/or replacements of the rearview camera systems or a component thereof, and through other internal sources.

81.     Defendants have been afforded a reasonable opportunity to cure its warranty breaches, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of the rearview camera systems.

82.     In addition, on or about September 21, 2022, Plaintiff gave notice to Defendants that he intended to pursue his Magnuson-Moss Warranty Act claims on behalf of a class of similarly situated consumers.

83.     As a direct and proximate cause of Defendants' violations of the Magnuson-Moss Warranty Act, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

## SECOND CAUSE OF ACTION
### Fraud by Omission or Fraudulent Concealment

84.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

85.     Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Multistate Class under Michigan law, or in the alternative, under the laws of the states in which they made their purchases and/or leases, or in the alternative, on behalf of the individual New York Sub-Class.

86.     Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the standard, quality, or grade of the Class Vehicles, the presence of

Rearview Camera Defect in the Class Vehicles, and the risk to the safety and reliability of the Class Vehicles due to the Rearview Camera Defect.

87.      Defendants' intentional and knowing concealment, suppression, and/or omission of these material facts was done with the intent that Plaintiff and Class Members would rely on Defendants' omissions.

88.      As a direct result of Defendants' fraudulent conduct, Class Members have suffered actual damages.

89.      Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Rearview Camera Defect, but Defendants concealed the Defect and never intended to repair or replace the Defect during the warranty periods.

90.      Defendants owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiff and Class Members because Defendants possessed superior and exclusive knowledge regarding the Defect.

91.      Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality, and reliability of the Class Vehicles because it consistently marketed the Class Vehicles as safe and capable of accurately displaying a rearview image to the driver.  Once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts because where one does speak, one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

92.     Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the Defect so that Defendants could sell additional Class Vehicles and avoid the cost of repair or replacement.

93.     The Defect exposes drivers and occupants to an unreliable vehicle with a safety defect.  Plaintiff and Class Members had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.  No reasonable consumer expects a vehicle to be designed, manufactured, and assembled with a rearview camera that does not display the rearview image, like the camera systems in the Class Vehicles, or exhibit other dangerous conditions.

94.     Plaintiff and Class Members would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect or would have paid less for the Class Vehicles.

95.     Defendants knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment of the Defect would enable it to sell more Class Vehicles and would discourage Plaintiff and members of the Class from seeking replacement or repair of the Defect.  By concealing the Defect, Defendants intended to induce Plaintiff and members of the Class into purchasing or leasing the Class Vehicles.

96.     Defendants acted with malice, oppression, and fraud.

97.     Plaintiff and Class Members reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active

concealment of material facts regarding the Defect and associated safety hazard, Plaintiff and Class

Members have suffered actual damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**Violation of New York General Business Law § 349**

98.     Plaintiff incorporates by reference the allegations contained in the previous

paragraphs of this Complaint.

99.     Plaintiff brings this cause of action against Defendants on behalf of himself and on

behalf of the New York Sub-Class.

100.     The sale and distribution of the Class Vehicles in New York constitutes a consumer-

oriented act and occurred in the conduct of trade or commerce and thereby is governed by the New

York deceptive acts and practices statute, General Business Law § 349 ("GBL § 349").

101.     Plaintiff and the members of the New York Sub-Class and Defendants are all

"persons" under GBL § 349(h).

102.     GBL § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any

business, trade or commerce."  Defendants' conduct, as set forth herein, constitutes deceptive acts

or practices under this section of New York law.

103.     In violation of the GBL § 349, Defendants failed to disclose and actively concealed

the Rearview Camera Defect in the Class Vehicles by marketing them as safe, reliable, functional,

and of high quality and by presenting themselves as a reputable manufacturer that values safety,

Defendants engaged in deceptive business practices in violation of GBL § 349.  Defendants

deliberately withheld the information about the propensity of the Rearview Camera Defect to cause

the failure of the rearview image display and other issues as described herein.  Further, Defendants

knew or should have known that such problems could cause the Class Vehicles to become involved

in collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk

for injury.  Defendants deliberately engaged in deceptive business practices prohibited by the GBL § 349 by concealing and failing to disclose this material information to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

104.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the Rearview Camera Defect.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, functional, and of high quality despite containing the Rearview Camera Defect and by claiming to be a reputable manufacturer that values safety.

105.    Defendants' deceptive trade practices were likely intended to deceive a reasonable consumer.  Plaintiff and members of the New York Sub-Class had no reasonable way to know that the Class Vehicles contained the Rearview Camera Defect, which was defective in materials, workmanship, design, and/or manufacture and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Rearview Camera Defect and its associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff and members of the New York Sub-Class did.

106.    Defendants intentionally and knowingly misrepresented material facts and omitted material facts regarding the Class Vehicles and the Rearview Camera Defect present in them with an intent to mislead Plaintiff and members of the New York Sub-Class.

107.    Defendants knew or should have known that its conduct violated the GBL § 349.

108.    Defendants made material statements and/or omissions about the safety, reliability, and functionality of the Class Vehicles and/or the defective rearview camera system installed in them that were either false or misleading.  Defendants' misrepresentations, omissions, statements,

and commentary have included selling and marketing Class Vehicles as safe, reliable, and functional, despite their knowledge of the Rearview Camera Defect and its corresponding safety hazard.

109.    To protect their profits and avoid remediation costs and public relations problems, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and existing Rearview Camera Defect at the time of sale or lease.  Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

110.    Defendants owed Plaintiff and members of the New York Sub-Class a duty to disclose the true safety, reliability, or functionality of the Class Vehicles and the existence of the Rearview Camera Defect because Defendant:

> a)      Possessed exclusive knowledge of the Rearview Camera Defect and its associated safety hazard;
>
> b)      Intentionally concealed the foregoing from Plaintiff and members of the New York Sub-Class; and/or
>
> c)      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and members of the New York Sub-Class that contradicted these representations, *inter alia*, that Rearview Camera Defect existed at the time of sale or lease which disrupts the proper performance of the rearview camera system in the Class Vehicles.

111.    Because Defendants and their authorized agents to perform repairs fraudulently concealed the Rearview Camera Defect in the Class Vehicles by denying the existence of the

Defect and/or pretending to fix the symptoms of the Defect, and now that the Defect has been discovered, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be.  Further, Plaintiff and members of the New York Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

112.    Defendants' failure to disclose and active concealment of the Defect in the Class Vehicles were material to Plaintiff and members of the New York Sub-Class.  But for Defendants' actions, Plaintiff and members of the New York Sub-Class would not have purchased and/or leased their Class Vehicles or would have paid less for them.

113.    Plaintiff and members of the New York Sub-Class suffered ascertainable losses caused by the Defendants' misrepresentations and their failure to disclose material information. Had Plaintiff and members of the New York Sub-Class been aware of the Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff, and members of the New York Sub-Class would not have paid as much for their vehicles or would not have purchased or leased them at all.  Plaintiff and members of the New York Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

114.    Plaintiff and members of the New York Sub-Class risk loss of use of their vehicles as a result of Defendants' acts and omissions in violation of GBL § 349, and these violations present a continuing risk to Plaintiff and members of the New York Sub-Class and the public in general.

115.    As  a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be proven at trial and seek all just and proper remedies, including but not limited to actual damages or $50, which is greater, treble damages up to $1,000, punitive damages to the extent available under law,

reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and all other just and appropriate relief available under GBL § 349.

**FOURTH CAUSE OF ACTION**
**Violation of New York General Business Law § 350**

116.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

117.    Plaintiff brings this cause of action against Defendants on behalf of himself and on behalf of the New York Sub-Class.

118.    The New York General Business Law § 350 ("GBL § 350") makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." *Id.* False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." GBL § 350-a.

119.    Defendants were engaged in the "conduct of business, trade or commerce," within the meaning of GBL § 350.

120.    FCA caused to be made or disseminated through New York, through advertising, marketing, and other publications, including through its agents who its authorized dealers, statements and omissions that were untrue or misleading, and that were known by Defendants, or that through the exercise of reasonable care should have been known by Defendants, to be untrue and misleading to Plaintiff and the members of the New York Sub-Class.

121.    In violation of the GBL § 350, Defendants failed to disclose and actively concealed the Rearview Camera Defect in the Class Vehicles by marketing them as safe, reliable, functional, and of high quality and by presenting themselves as a reputable manufacturer that values safety,

26

Defendants engaged in deceptive business practices in violation of GBL § 350. Defendants deliberately withheld the information about the propensity of the Rearview Camera Defect to cause the failure of the rearview image display and other issues as described herein. Further, Defendants knew or should have known that such problems could cause the Class Vehicles to become involved in collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury. Defendants deliberately engaged in deceptive business practices prohibited by the GBL § 350 by concealing and failing to disclose this material information to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

122.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the Rearview Camera Defect. Defendants compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, functional, and of high quality despite containing the Rearview Camera Defect and by claiming to be a reputable manufacturer that values safety.

123.    Defendants' deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiff and members of the New York Sub-Class had no reasonable way to know that the Class Vehicles contained the Rearview Camera Defect, which was defective in materials, workmanship, design, and/or manufacture and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Rearview Camera Defect and its associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff and members of the New York Sub-Class did.

124.    Defendants intentionally and knowingly misrepresented material facts and omitted material facts regarding the Class Vehicles and the Rearview Camera Defect present in them with an intent to mislead Plaintiff and members of the New York Sub-Class.

125.    Defendants knew or should have known that its conduct violated the GBL § 350.

126.    Defendants made material statements and/or omissions about the safety, reliability, and functionality of the Class Vehicles and/or the defective rearview camera system installed in them that were either false or misleading.  Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe, reliable, and functional, despite their knowledge of the Rearview Camera Defect and its corresponding safety hazard.

127.    FCA's false advertising was likely to and did, in fact, deceive reasonable consumers, including Plaintiff and members of the New York Sub-Class, about the safety, reliability, functionality, and true characteristics of the Class Vehicles, the quality of the FCA brand and the Class Vehicles, and the true value of the Class Vehicles.

128.    To protect their profits, avoid remediation costs and public relations problems, and increase their profits by having consumers pay for any parts and repairs to remedy the Rearview Camera Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and existing Rearview Camera Defect at the time of sale or lease.  Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

129.    Defendants' failure to disclose and active concealment of the Defect in the Class Vehicles were material to Plaintiff and members of the New York Sub-Class.  But for Defendants'

actions in violation of GBL § 350, Plaintiff and members of the New York Sub-Class would not have purchased and/or leased their Class Vehicles or would have paid less for them.

130.    Plaintiff and members of the New York Sub-Class risk loss of use of their vehicles as a result of Defendants' acts and omissions in violation of GBL § 350, and these violations present a continuing risk to Plaintiff and members of the New York Sub-Class and the public in general.

131.    Plaintiff and members of the New York Sub-Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of FCA's false advertising in violation of GBL § 350, including but not limited to overpaying for the Class Vehicles, lost or diminished use, enjoyment and utility of such vehicles, and annoyance, aggravation, and inconvenience resulting from Defendants' violation of GBL § 350.

132.    As a result of Defendants' foregoing willful, knowing, and wrongful conduct, Plaintiff and members of the New York Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for members of the New York Sub-Class.  Because Defendants' conduct was committed willingly and knowingly, Plaintiff and the members of the New York Sub-Class are entitled to recover three times the actual damages, up to $10,000.

### FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

133.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

134.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Multistate Class under the laws of the states in which they made their purchases and/or leases, or in the alternative, on behalf of the individual New York Sub-Class.

135.    Defendants provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their rearview camera systems suffered from an inherent defect at the time of sale and thereafter.

136.    Plaintiff and Class Members were not required to notify FCA of its breach of implied warranty and/or were excused from doing so because affording FCA a reasonable opportunity to cure its breach of implied warranty would have been futile.  Defendants were also on notice of the Defect from the complaints and service requests they received from Class Members, from repairs and/or replacements of the rearview camera system or a component thereof, and through other internal sources.

137.    Defendants have been afforded a reasonable opportunity to cure its breach, including when Class Members brought their vehicles in for diagnoses and repair of the rearview camera system.

138.    In addition, on or about July 8, 2022, Plaintiff gave notice to Defendants that he intended to pursue his warranty claims on behalf of a class of similarly situated consumers.

139.    Because Plaintiff purchased his vehicles from an authorized Ram dealer, they are in privity with FCA since (1) an agency relationship establishes privity for purposes of the breach of implied warranty claims and (2) privity is not required where plaintiffs are intended third-party beneficiaries of a defendant's implied warranties.

140.    As a result of the Defendants' breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

141.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty

142.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

143.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Multistate Class under the laws of the states in which they made their purchases and/or leases, or in the alternative, on behalf of the individual New York Sub-Class.

144.    As a result of the Defendants' breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Rearview Camera Defect, Plaintiff and members of the Class were harmed and suffered actual damages in that the Class Vehicles' rearview camera systems are substantially certain to fail before their expected useful life has run.

145.    Defendants provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

146.    Defendants manufactured and/or installed the rearview camera system and its component parts in the Class Vehicles, and the rearview camera system and its component parts are covered by the express  warranty.

147.    Defendants warranted that they would repair or replace, free of charge, any defects in material or workmanship in the Class Vehicles that manifested during the warranty period.

Despite such warranty, Defendants failed to make such required repairs on three separate occasions when presented with Plaintiff's vehicle during the warranty period.

148.    Plaintiff and members of the Class were not required to notify FCA of its breach of express warranty and/or were excused from doing so because affording FCA a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendants were also on notice of the Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the rearview camera systems or a component thereof, and through other internal sources.

149.    Further, Defendants were notified of the Defect and have been afforded a reasonable opportunity to cure its breach, including when Plaintiff and members of the Class brought their vehicles in for diagnoses and repair of the rearview camera systems.

150.    As a direct and proximate cause of Defendants' breach, Plaintiff and members of the Class suffered, and continue to suffer, damages, including economic damages at the point of sale or lease.  Additionally, Plaintiff and members of the Class either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

151.    Plaintiff and members of the Class are entitled to legal and equitable relief against Defendants, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## SEVENTH CAUSE OF ACTION
### Fraud or Fraudulent Concealment

152.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

153.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Multistate Class under the laws of the states in which they made their purchases and/or leases, or in the alternative, on behalf of the individual New York Sub-Class.

154.    Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the standard, quality, or grade of the Class Vehicles, the presence of Rearview Camera Defect installed in the Class Vehicles, and the risk to the safety and reliability of the Class Vehicles due to the Rearview Camera Defect.

155.    Defendants' intentional and knowing concealment, suppression, and/or omission of these material facts was done with the intent that Plaintiff and members of the Class would rely on Defendants' omissions.

156.    As a direct result of Defendants' fraudulent conduct, Class Members have suffered actual damages.

157.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Rearview Camera Defect, but Defendants concealed the Defect and never intended to repair or replace the Defect during the warranty periods.   To date, Defendants have not provided Plaintiff and members of the Class with a repair or remedy that will eliminate the Rearview Camera Defect.

158.    Defendants owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiff and members of the Class because Defendants possessed superior and exclusive knowledge regarding the Defect.   Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the Defect so that Defendants could sell additional Class Vehicles and avoid the cost of repair or replacement.

159.    Additionally, once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts. When one does speak, one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

160.    The Defect exposes drivers and occupants to an unreliable vehicle with a safety defect.  Plaintiff and members of the Class had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard.  No reasonable consumer expects a vehicle to be designed, manufactured, and assembled with a rearview camera system that, like the rearview camera systems in the Class Vehicles, causes reduced rearview camera performance or rearview image display failure.

161.    Plaintiff and members of the Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Defect or would have paid less for the Class Vehicles.

162.    Defendants knew their concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Defect would enable it to sell more Class Vehicles and would discourage Plaintiff and members of the Class from seeking replacement or repair of the Defect. By concealing the Defect, Defendants intended to induce Plaintiff and members of the Class into purchasing or leasing the Class Vehicles.

163.    Defendants acted with malice, oppression, and fraud.

164.    Plaintiff and members of the Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Defect and associated safety hazard, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment

165.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint, except those paragraphs sounding in contract.  This cause of action is brought in the alternative to the breach of express and implied warranty causes of action.

166.    Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Multistate Class under the laws of the states in which they made their purchases and/or leases, or in the alternative, on behalf of the individual New York Sub-Class.

167.    Plaintiff and Class Members conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Rearview Camera Defect and associated safety risks.

168.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Defect in the Class Vehicles.

169.    As a proximate result of Defendants' omissions and concealment of the Rearview Camera Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits, and profits, Defendants have been unjustly enriched at the expense of Plaintiff and Class Members.  It would be inequitable for Defendants to retain its ill-gotten profits without paying the value thereof to Plaintiff and Class Members.

170.    Plaintiff and Class Members are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits, and profits, including interest, resulting from its unlawful, unjust and inequitable conduct.

171.    Plaintiff and Class Members seek an order requiring Defendants to disgorge their gains and profits to Plaintiff and Class Members, together with interest, in a manner to be determined by the Court.

## RELIEF REQUESTED

172.    Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against Defendants, as  follows:

a)    An order certifying the proposed Class and the New York Sub-Class, designating Plaintiff as named representative of the Class and Sub-Class, and designating the undersigned as Class Counsel;

b)    A declaration that Defendants is financially responsible for notifying all Class Members about the defective nature of the rearview camera system;

c)    An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendants to issue a voluntary recall for the Class Vehicles pursuant to 49 U.S.C. § 30118(a); compelling Defendants to remove, repair, and/or replace the Class Vehicles' rearview camera systems with an alternative product(s) that do not contain the Defect alleged herein; enjoining Defendants from selling the Class Vehicles with misleading information concerning the Defect; and/or compelling Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d)    An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

e)    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles or make full restitution to Plaintiff and Class Members

f)    Any and all applicable relief;

g)    An award of attorneys' fees and costs, as allowed by law;

h)    An award of pre-judgment and post-judgment interest, as provided by law;

i)    Leave to amend the Complaint to conform to the evidence produced at trial; and

j)    Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

173.    Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated: **[ADD]**

Respectfully Submitted,

*/s/Todd S. Garber*
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
Todd S. Garber
John Sardesai-Grant
One North Broadway, Suite 900
White Plains, New York 10601
tgarber@fbfglaw.com
jsardesaigrant@fbfglaw.com

*Attorneys for Plaintiff*
*and the Putative Class and Sub-Class*