USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/08/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY TARSIO,

                              Plaintiff,

   -against-

FCA US LLC et al.

                             Defendants.

No. 22-CV-9993 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

    Plaintiff Anthony Tarsio ("Plaintiff") brings this action individually and on behalf on behalf of a putative class consisting of all persons in the United States and its territories who purchased or leased any 2022 Ram 1500, Ram 2500, and Ram 3500 Chassis Cab Vehicles with gross vehicle weight rating (GVWR) of less than 10,000 pounds (collectively, "Vehicles"). (*See* Complaint ("Compl."), ECF No. 1.) The Vehicles are designed, manufactured, warranted, marketed and sold by FCA US LLC ("Defendant") and Stellantis N.V. f/k/a Fiat Chrysler Automobiles N. V. (*Id.*) Plaintiff alleges that the Vehicles were built with a defective rearview camera system and asserts violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303, *et seq.* (Count I); fraud by omission/fraudulent concealment (Count II); violations of N.Y. G.B.L. § 349 (Count III); violation of N.Y. G.B.L. § 350 (Count IV); breach of implied warranty of merchantability (Count V); breach of express warranty (Count VI); fraud/fraudulent concealment (Count VII); and unjust enrichment (Count VIII). (*Id.*)

    Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)6), Defendant has moved to dismiss the Complaint. ("Motion", ECF No. 16.) For the following reasons, Defendant's Motion is GRANTED.

**FACTUAL BACKGROUND**

The following facts are taken from the Complaint and assumed to be true for the purposes of this Motion.

Plaintiff alleges that "[model-year] 2022 Ram 1500, Ram 2500, Ram 3500 Chassis Cab Vehicles with gross vehicle weight rating (GVWR) of less than 10,000 pounds" were built with a "defective rearview camera system" (the "Defect") that can cause the backup camera "to function intermittently or to fail altogether." (Compl. ¶¶ 1-2.) Plaintiff bases these allegations on a motor-vehicle recall being implemented under the supervision of the National Highway Traffic Safety Administration ("NHTSA"), designated NHTSA Recall 22V-407. (*See, e.g.*, *id.* ¶¶ 3, 12, 39, 46-47.) Defendant announced Recall 22V-407 in June 2022. (*Id.* at ¶ 39.)

Plaintiff is New York resident who purchased a model-year 2022 Ram 1500 from a third-party dealership in New York "in or around February 2022." (*Id.* ¶¶ 20-21.) Plaintiff noticed the Defect at some point shortly after his purchase and returned to the dealership three times "during the first month of ownership" to initiate repairs. (*Id.* ¶ 24.) During the first two visits, the dealership provided some undescribed repairs, which Plaintiff suggests were ineffective. (*Id.*) On the third visit, Plaintiff alleges the dealership told him that Defendant was "aware of a software defect causing the rearview camera failure," but had not yet created a solution. (*Id.*) Plaintiff does not state whether he brought his Vehicle in after June 2022 for the Recall 22V-407 repair or returned to the dealership for any further repairs.

On July 9, 2022, Plaintiff's Vehicle was involved in an accident with another vehicle while "back[ing] out of his driveway," during which "his rearview camera system failed to operate." (*Id.* ¶ 25.) Although Plaintiff indicates there was some "damag[e]" to both vehicles, he does not

describe that damage or suggest he was forced to pay anything to have his Vehicle repaired. (*See id.*)

Plaintiff alleges that Defendant "knew or should have known" of the alleged Defect prior to his purchase of his vehicle because of "pre-production testing, failure mode analysis, reports to authorized dealers and repair centers, and complaints to NHTSA." (*See id.* ¶¶ 11, 40.)

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on November 23, 2022. (ECF No. 1.) Defendant filed the instant Motion on April 13, 2023 (ECF No. 16), as well as a memorandum of law in support thereof ("Def.'s MoL.", ECF No. 17). Plaintiff filed opposition papers. (ECF No. 18.) Defendant also filed a reply brief. (ECF No. 19.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the Court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. *See Fed. R. Civ. P.* 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). To have standing, a plaintiff must prove: (1) he or she has suffered a "concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"That a suit may be a class action ... adds nothing to the question of standing," because "even named plaintiffs who represent a class 'must allege and show that they personally have been

injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *see also Ross v. AXA Equitable Life Ins. Co.*, 115 F.Supp.3d 424, 432 (S.D.N.Y. 2015) (same). Accordingly, "the relevant legal entity for determining whether Article III standing is proper is the named plaintiff(s), not the proposed class." *O'Neill v. Standard Homeopathic Co.,* 346 F. Supp. 3d 511, 525 (S.D.N.Y. 2018) (quoting *Catalano v. BMW of N. Am., LLC*, 167 F.Supp.3d 540, 553 (S.D.N.Y. 2016)).

In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The Plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## II.     Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). "The complaint's allegations are assumed to be true, and a plaintiff need only make a prima facie showing of personal jurisdiction." *Struna v. Leonardi*, 626 F. Supp. 3d 657, 665 (S.D.N.Y. 2022) (citation omitted). The court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor. *Id.* However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as

a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).

### III. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for "failure to state a claim upon which relief can be granted," a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court will accept the facts in a complaint as true "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## DISCUSSION

Defendant seeks to dismiss all the causes of action in the Complaint on standing grounds. (*See* Def.'s MoL at Section III.B.) As it must address jurisdictional concerns first, the Court begins with the Defendant's contention that the Plaintiff lacks standing. *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) ("[S]tanding is a threshold matter [that a court] must resolve before reaching the merits." (internal quotation marks omitted)); *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 522 (S.D.N.Y. 2018) ("[t]he Court will first address

[d]efendants' Mootness and Standing arguments, because they are directed at the Court's jurisdiction."). As explained below, the Court concludes that Plaintiff has failed to allege plausibly a concrete, imminent injury that is traceable to Defendant's conduct. The Court therefore dismisses all Plaintiff's claims for lack of subject matter jurisdiction. Consequently, the Court does not reach Defendant's arguments that the Court lacks personal jurisdiction over Plaintiff's claims against Defendant or that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).

Plaintiff bears the burden of establishing standing and, when "a case is at the pleading stage, must 'clearly…allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

Here, Defendant argues that the Court lacks standing over because Plaintiff (and any putative class members) were offered a NHTSA-backed recall providing Vehicle owners with free repairs as well as reimbursement for any prior repairs before the initiation of this lawsuit. (*See* Compl. ¶ 39*;* Def.'s MoL at 8.) Because the recall fully redresses any injury suffered by Plaintiff, Defendant contends, Plaintiff cannot allege an injury in fact. (Def.'s MoL at 8.) Plaintiff seeks damages based on "out-of-pocket losses by overpaying for the vehicles," "decreased performance of the vehicles," "diminished value of the vehicles," "lost or diminished use, enjoyment and utility of such vehicles." (Compl. ¶¶ 28, 131; *see also id.* at pp. 36-37 ("Relief Requested").) He further seeks, *inter alia*, an injunction against "further deceptive distribution, sales, and lease practices," "a voluntary recall," an order "compelling [Defendant] to reform its warranty…to cover the injury

alleged," and attorney's fees. (*Id.*) The Court scrutinizes each theory of injury in turn to assess if it is sufficiently concrete for standing purposes.

*First*, the Court holds that Plaintiff has failed to sufficiently allege an injury due to overpaying for the Vehicle. Plaintiff alleges that he and the other putative class members "would not have purchased the Class Vehicles or would have paid less for them if Defendant[] did not conceal material information about the existence of the [alleged D]efect." (*Id.* ¶ 27.) "[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement." *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012); *accord Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010). But if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury. *See Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012) (finding no case "in which a court has held that a plaintiff sustained actual damages where a defendant has an unrestricted refund policy that fully compensated the plaintiff"). Here, Defendant has provided exactly such a refund through the NHTSA-approved recall and repair. Courts in the Sixth, Ninth and Tenth Circuits have repeatedly found that the issuance of a recall and repair deprives a party of an injury in fact based on any defect(s) remedied by the recall and repair. *See, e.g., Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378 (6th Cir. 2015); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012); *Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 468–69 (E.D. Mich. 2022); *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019); *Cheng v. BMW of N. Am., LLC*, No. CV 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013). This Court has previously, on a handful of occasions, found the opposite, but, as this opinion explains, *infra*, in contexts distinguishable from the present.

"[B]y instigating a voluntary recall, [Defendant] 'set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process.'" *Winzler*, 681 F.3d at 1211. As a matter of common sense, therefore, the economic loss injury based on the Vehicles' decreased value no longer exists if Defendant has, through the NHTSA-backed recall, offered to remove the complained-of Defect free of charge.[1] *See Hadley*, 624 F. App'x at 378 ("[T]he repair of the ORC Module that the plaintiffs received removed the defect upon which the plaintiffs' diminished-value injury claim is based."). Plaintiff "does not allege any additional property damage to his [V]ehicle or any other property other than the [alleged Defect] itself. His only concrete injury amounts to the money he paid for a defective product. The NHTSA-backed recall fully redresses this injury." *Comes v. Harbor Freight Tools USA, Inc.*, No. CV 20-5451-DMG (KKX), 2021 WL 6618816, at *5 (C.D. Cal. Sept. 29, 2021).

Moreover, Plaintiff does not allege that he or any other putative class member experienced any problem related to rear-camera functionality *after* receiving the free recall repair. It is therefore "unclear how Plaintiff can demonstrate injury in light of [Defendant's] offer to completely repair the [alleged D]efect." *See Cheng*, 2013 WL 3940815, at *4. To be sure, Plaintiff may have been injured at the time of the purchase of the Vehicle, but he has failed to adequately allege that the purported Defect remains after the recall remedy has been completed. "If the post-recall remedy Vehicles perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored." *Sugasawara*, 2019 WL 3945105, at *6.

---

[1] Plaintiff additionally contends that he and the putative Class Members have suffered an injury by having to pay out-of-pocket for repairs and loaners. (Compl. ¶ 19.) But Plaintiff admits that Defendant's recall "offer[ed] all owners a free repair, as well as reimbursement for any prior repairs." (*See, e.g.*, *id.* at ¶ 39, 46-47.) This recall was also available months prior to filing of this Complaint, obviating the need for any owners of the Vehicles to obtain a loaner vehicle. Accordingly, this theory of harm also fails. *See Sugasawara*, 2019 WL 3945105, at *5.

This Court has previously denied dismissal on the ground that a defendant has provided a recall, but only where such an offer was "simply a voluntary recall effort…without any detail as to the procedures followed," in contrast to the recall offered here by Defendant that is "overseen by the National Highway Transportation Safety Administration,…[where] the [D]efendant [i]s obligated by statute to undertake certain measures in instituting that recall." *O'Neill*, 346 F. Supp. 3d at 524 n.4. This Court has also refused to dismiss a complaint where the alleged recall has "not been fully effective, leaving at least some [p]laintiffs with defective cars and indisputably live claims." *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *40 (S.D.N.Y. July 15, 2016); *see also Shaaya v. Jaguar Land Rover N. Am. LLC*, No. 2:20-CV-5679, 2022 WL 2341599, at *5 (D.N.J) June 29, 2022) ("Defendant argues that Freiburghouse does not have standing because he has not paid for any repairs, since Penske Jaguar replaced his diesel fluid tank and fluid injector, and induced regeneration free of charge. Mot. at 11. However, as these repairs were allegedly ineffective, the fact that they were done for free does not preclude standing."); *Peckerar v. Gen. Motors, LLC*, No. EDCV182153DMGSPX, 2020 WL 6115083, at *2 (C.D. Cal. Aug. 17, 2020) ("Plaintiffs assert that the Recall has not in fact remedied the Alleged Defect, and that their vehicle "remains defective" even after undergoing the recommended repair…If the Recall repair has not fixed the defect, it did not restore Plaintiffs' vehicle to its pre-defect value.").[2]

Here, by contrast, Plaintiff does not allege that Defendant's NHTSA-backed repair was ineffective. In fact, Plaintiff has not yet made clear whether he has availed himself of the recall remedy at all, despite Defendant's challenge to do so. (*See* Def's MoL at 8.)

---

[2] Notably, both *O'Neill*, 346 F. Supp. 3d at 511 and *In re: Gen. Motors*, 2016 WL 3920353, at *40 discussed recalls in the context of mootness, not standing. The Court addresses the cases in its analysis because mootness, like standing, goes to justiciability.

"To the extent [Plaintiff] has not done so, he cannot thereby manufacture standing. Any defect that persists in [his Vehicle] is not fairly "traceable" to [Defendant] but rather to [Plaintiff]; causation would therefore be lacking." *Sugasawara*, 2019 WL 3945105, at *6. In sum, Plaintiff "alleges that he overpaid for a product that has diminished value because of its defects," but because of the NHTSA-approved recall and repair, he "has a perfectly adequate remedy available to him, and that defeats his price-premium theory of injury." *See Kommer v. Ford Motor Co.*, No. 117CV296LEKDJS, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017).

*Second,* Plaintiff's theory of injury involving diminished value and decreased performance is not credible because his allegations that the Vehicles are worth less or perform worse are conclusory and unsupported by any facts. Plaintiff does not, for example, "allege[] a demonstrable effect on the market for their specific vehicles based on documented recalls or declining Kelley Bluebook values ...nor ha[s] [he] alleged a risk so immediate that [he] [was] forced to replace or discontinue using their [V]ehicles, thus incurring out-of-pocket damages." *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 722–24 (9th Cir. 2017). Plaintiff also fails to allege that the Vehicles continue to suffer "reduced rearview camera performance" following the recall and repair. The Complaint instead only makes vague references to the Vehicle's diminished value and decreased performance, with a single supporting fact to suggest if and how their value and/or performance has lessened.  (*See* Compl. ¶¶ 19, 28, 111.) "Thus, [P]laintiff[] ha[s] only made conclusory allegations that the[] [Vehicles] are worth less and have not alleged sufficient facts to establish Article III standing." *Cahen*, 717 F. App'x at 723–24.

*Third*, Plaintiff argues that lost or diminished use, enjoyment and utility of the Vehicles establishes an injury. (Compl. ¶ 131.) Once again, this allegation is conclusory and devoid of any factual support. For example, Plaintiff "do[es] not allege that [he] ever stopped using [his]

[V]ehicle," or that he cannot drive it today. *See Hadley,* 624 F. App'x at 378–79. Accordingly, as currently drafted, the Complaint fails to establish a concrete injury involving lost or diminished use, enjoyment and utility of the Vehicles that can be redressed by a judgment in Plaintiff's favor. *See id.*

*Fourth*, Plaintiff seeks an injunction against "further deceptive distribution, sales, and lease practices," "a voluntary recall," an order "compelling [Defendant] to reform its warranty…to cover the injury alleged." There is no need for the Court to order a recall when Defendant, prior to the filing of this suit, has already initiated one. *See Hadley,* 624 Fed. Appx. at 375 (dismissing complaint for damages, declaratory and injunctive relief because defendant acknowledged defect prior to the lawsuit and "promised to repair the defect for free as quickly as possible, and did in fact repair the plaintiffs' vehicle."). And "[w]hile Plaintiff'[s] [Vehicle] may not yet be repaired, [he] 'ha[s] in hand a remedial commitment from [the Defendant] and NHTSA'…This Court can offer little by way of an injunction or declaratory relief that will not already be provided through the recall." *Sharp*, 637 F. Supp. 3d at 468–69 (quoting *Winzler*, 681 F.3d at 1211.)

Without a concrete injury that is fairly traceable to Defendant's alleged wrongdoing, Plaintiff cannot sustain his claim. The Court therefore dismisses the Complaint for lack of standing, pursuant to Rule 12(b)(1). However, because Plaintiff could allege additional facts to establish standing, the Court grants Plaintiff leave to amend.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Complaint is GRANTED and all claims are dismissed without prejudice. Plaintiff is granted leave to file an Amended Complaint as to all claims. If Plaintiff chooses to do so, Plaintiff will have until April 29, 2024 to

file an Amended Complaint. The Defendant is then directed to answer or otherwise respond by May 13, 2024.

If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 16.

Dated:  April 8, 2024                                  SO ORDERED:
        White Plains, New York

                                                       _____
                                                       NELSON S. ROMÁN
                                                       United States District Judge